## AFFIDAVIT OF SPECIAL AGENT SETH TOENSING IN SUPPORT OF A CRIMINAL COMPLAINT

I, Seth Toensing, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a special agent with the U.S. Department of State's Diplomatic Security Service ("DSS").  I am currently assigned to the Criminal Fraud Investigations Branch ("CFI") at DSS Headquarters.  CFI conducts criminal investigations of, among other things, complex transnational human trafficking and exploitation.  I have been employed as a special agent with DSS since 2016.  I am a graduate of the Criminal Investigator Training Program and the Land Management Police Training Program located at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia, and DSS Basic Special Agent Course.

2.      As a Special Agent with DSS, I have received training in investigating violations of federal statutes, including but not limited to visa and passport fraud, human smuggling, and human trafficking and exploitation.  I have also received advanced training at FLETC regarding criminal investigations conducted on the Internet and the use of social media and other electronic means of communication to commit crimes.  Additionally, I have completed the Massachusetts Municipal Police Training Council Sexual Assault Investigator Course, where I received advanced training regarding the sexual abuse and exploitation of minors.  I have also received advanced training regarding the investigation of child abuse and exploitation cases.

3.      Before joining DSS as a Special Agent, I was a federal law enforcement officer with the National Park Service, beginning in 2008.  I am a graduate of the University of Connecticut, and I have a master's degree from Boston University.

25-1410-DLC

4.      I submit this affidavit in support of a criminal complaint charging Tyler BULLOCK ("BULLOCK") (YOB 1995) of Dracut, Massachusetts of one count of being a felon in possession of a firearm and ammunition, in violation of Title 18, United States Code, Section 922(g)(1).

5.      The statements in this affidavit are based in part on information and written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; information gathered from the service of subpoenas and other records; independent investigation and analysis by DSS agents/analysts; and my experience, training, and background as a Special Agent with DSS.  Since this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to secure a criminal complaint.

## PROBABLE CAUSE

6.      In or around April 2025, DSS received information from PayPal[1] about a large network of individuals in India (the "TARGET NETWORK") who were suspected of selling of child sexual abuse material ("CSAM")[2] via social media and using PayPal to receive payments.

---

[1] PayPal is an American company that operates, among other things, a multinational online payments system.

[2] "Child pornography" is a term defined by statute as "any visual depiction…of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaged in sexually explicit conduct."  *See* 18 U.S.C. § 2256(8)(A).  In recent years, child pornography has been more widely referred to as "child sexual abuse material (CSAM)," including by law enforcement and the National Center for Missing and Exploited Children

7.      After having been alerted to the TARGET NETWORK, DSS began investigating the buyers who had paid these accounts, and in the course of the investigation, identified numerous U.S.-based buyers.  One such individual is Dracut, Massachusetts resident Tyler BULLOCK (hereinafter, "BULLOCK").  BULLOCK—who has sent money to the TARGET NETWORK on several occasions—is a registered sex offender as a result of a 2016 conviction for violating MGL. ch. 272, § 29C, Purchase or Possession of Child Pornography—a felony punishable by imprisonment in Massachusetts state prison for up to five years.  See Lowell District Court No. 1411CR004569.  In addition, as a result of that conviction, BULLOCK is federally prohibited from possessing firearms and ammunition.  *See* 18 U.S.C. § 922(g)(1).

8.      Information obtained during DSS's investigation of BULLOCK shows that multiple payments have been made from financial accounts maintained and controlled by BULLOCK, using an IP address that resolves to BULLOCK's residence, to seller accounts in the TARGET NETWORK.

9.      Pursuant to this ongoing investigation, DSS and other law enforcement executed federal search warrants (25-1374-DLC and 25-1375-DLC) to search BULLOCK's residence in Dracut, Massachusetts and his person for evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252A.  The affidavit submitted in support of the search warrants is attached as Sealed Exhibit 1.

10.      Agents executed the warrants on November 6, 2025, at approximately 9:30 AM. Upon entry to the residence, agents encountered BULLOCK.

("NCMEC").  Where I use that term in this affidavit, it is to refer to child pornography as defined by federal statute.

25-1410-DLC

11.     BULLOCK was advised of his *Miranda* rights, which he waived in writing and agreed to speak with agents.  The interview, which occurred in a rented law enforcement vehicle outside the residence, was audio recorded; the account that follows is summary in nature and is not intended to be a verbatim account or transcript of the interview.

12.     At the outset of the interview, which I participated in, investigators inquired into specific payments made by BULLOCK's accounts to confirmed sellers of CSAM.   He denied making those purchases.  He later conceded that he did make those specific purchases (and others) but did so with the intent of obtaining "uncensored" war footage rather than CSAM.  He stated that he received Mega[3] links for these purchases via Telegram[4] and that the majority of content contained at these Mega links would in fact be child pornography.  He claimed to delete any CSAM received in response to solicitations for war footage.

13.     Later in the interview, BULLOCK admitted to soliciting CSAM online via the Telegram messaging application.  He stated that he was molested as a child and wanted to find footage of himself online.  To do so, BULLOCK admitted that on several occasions he solicited and paid for CSAM, specifically including boys around 11 years of age, and that in response he received CSAM via Mega links sent on the Telegram platform, which he viewed.  He denied a sexual interest in the CSAM he received.

14.     BULLOCK provided passcodes to various electronic devices, including his iPhone, laptop, and iPad.  On the iPad, investigators located what appeared to be a single image

[3] Mega is a New Zealand-based cloud storage service that allows users to access and share content via transmission of end-to-end encrypted links.

[4] Telegram is an end-to-end encrypted messaging platform.

of AI-generated CSAM.  BULLOCK stated to law enforcement that there may be additional computer-generated images of child pornography on the iPad.

15.    Investigators performing an on-scene preliminary review of the devices noted that the Telegram application was deleted on the iPhone.  BULLOCK provided consent for investigators to attempt a re-download of the Telegram application, and to assume control of the Telegram application, but investigators were unable to download the application on scene.  At this time, investigators have not discovered CSAM on BULLOCK's devices.  Forensic examination of BULLOCK's devices is ongoing.

16.    The search of the residence—a two-story, single-family home, where BULLOCK lives alone—was conducted during the interview.  There are four bedrooms in the home, two on each floor.  Only one bedroom, on the first floor, appeared to be used as a functioning bedroom; the remaining three bedrooms appeared unoccupied and used for storage.

17.    In the first-floor bedroom, which appeared to be used by BULLOCK, investigators located a Ruger P85, 9mm pistol, in a small safe under a rug near the bed.  The magazine for that pistol was inserted into the handle and contained several rounds of 9mm ammunition; there was no ammunition in the firing chamber of the pistol.  Investigators further located additional 9mm ammunition (approximately 42 rounds) on top of the dresser in this same bedroom.

18.    During BULLOCK's interview, investigators inquired about this Ruger pistol.  BULLOCK admitted that he knew he was prohibited by his felony status from possessing a firearm or ammunition.  He further conceded to being worried about the potential consequences

25-1410-DLC

of possessing this firearm and ammunition.  He stated he has been in possession of this firearm for approximately two years and was holding it for someone else.

19.     Using the serial number, investigators ran a NCIC query into this firearm and discovered that it was reported stolen in transit from New Hampshire to Arizona.  It is further stamped with the word "Connecticut," which is a state where Ruger manufactures firearms.  I am aware that Ruger does not manufacture firearms in Massachusetts. I am further aware there are no commercial manufacturers of ammunition in Massachusetts.

20.      Accordingly, the Ruger firearm and 9mm ammunition, located in BULLOCK's bedroom, necessarily traveled in interstate commerce.

21.     In the upstairs bedroom, investigators also located and seized a partially assembled rifle.  BULLOCK stated that this rifle was a German WWII-era vintage relic or souvenir.  In the same upstairs bedroom, investigators located numerous WWII-era German military medals, patches, and memorabilia containing Nazi symbolism.

22.     In the bedroom where the Ruger pistol was located, investigators located a copy of *Mein Kampf*.  In the safe where the pistol was located, investigators also discovered what appears to be a knife bearing the *Schutztaffel* ("SS") lightning bolts and a swastika.

### CONCLUSION

23.     Based on all of the foregoing, I submit that there is probable cause to believe that on or about November 6, 2025, Tyler BULLOCK, knowing he was previously convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting interstate commerce, a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

25-1410-DLC

Respectfully submitted,

*Seth Toensing*  DLC

Seth Toensing
Special Agent
Diplomatic Security Service


Sworn to me by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) on this 6th day of November, 2025.

HON. DONALD L. CABELL
CHIEF UNITED STATES MAGISTRATE JUDGE